Leander TUNGATE, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 95–SC–10–DG.

Supreme Court of Kentucky.

July 6, 1995.

F. Larkin Fore, Mulloy, Walz, Wetterer,
Fore & Schwartz, Louisville, for appellant.

Chris Gorman, Atty. Gen., Lana Grandon,
Asst. Atty. Gen., Crim. Appellate Div.,
Frankfort, for appellee.

SPAIN, Justice.

Leander Tungate was indicted by a Jefferson County Grand Jury and charged with thirteen counts of first-degree sexual abuse of little girls under twelve years of age during the period from November 1986 through December 1991. It was alleged that the incidents occurred while the children were in the daycare center operated by the appellant's wife at the Tungates' residence in Jef-

fersontown. The alleged sexual abuse involved the little girls sitting in the appellant's lap while he was sitting in a large chair, and consisted of his putting his hand under the clothing of the children and touching their vaginal areas. At the close of its case, the Commonwealth voluntarily dismissed seven of the counts, about which it had offered no proof. At the conclusion of all the evidence, the remaining six counts were submitted to the jury which, after deliberation, returned verdicts of not guilty as to three counts and of guilty as to the remaining three counts. Punishment was fixed at imprisonment for one year on each of the three convictions, with a recommendation of consecutive sentencing. The trial court denied probation and sentenced the appellant to a total of three years' confinement. Shock probation was also denied, after which the Court of Appeals affirmed the conviction and sentence. This Court granted discretionary review, and we now likewise affirm.

The appellant's first contention is that the Commonwealth failed to prove that the alleged sexual contact was done for the purpose of sexual gratification, a necessary element of the crime of first-degree sexual abuse. *See* KRS 510.010(7) and 510.110. Accordingly, it is argued that the appellant's motions for a directed verdict were erroneously denied. The appellant attempts to support his argument by pointing to the fact that all three of the little girls whom the appellant was convicted of sexually abusing testified that the physical contact or touching felt "bad." Further, it is said that when the appellant testified, he denied any sexual contact with the victims, let alone any touching for the purpose of his sexual gratification.

In *Anastasi v. Commonwealth*, Ky., 754 S.W.2d 860, 862 (1988), we said:

> Sexual gratification is a single element of the crime of sexual abuse in the first degree ... Intent can be inferred from the actions of an accused and the surrounding circumstances. The jury has wide latitude in inferring intent from the evidence.

*Also see Waters v. Kassulke*, 916 F.2d 329 (6th Cir.1990); *State v. Merrifield*, 478 A.2d 1131 (Me.1984); *People v. Duenaz*, 148 Mich. App. 60, 384 N.W.2d 79 (1985).

■ Based on the evidence taken as a whole, accepted as true and viewed in a light most favorable to the Commonwealth, it was certainly not clearly unreasonable for the jury to find beyond a reasonable doubt that the Commonwealth met its burden of proving each element of each offense, including that the touching was done for the purpose of sexual gratification. *Commonwealth v. Benham*, Ky., 816 S.W.2d 186 (1991); *Commonwealth v. Sawhill*, Ky., 660 S.W.2d 3 (1983). The trial court did not err when it denied the appellant's motions for a directed verdict of acquittal on all three charges.

For his second ground for seeking reversal, the appellant cites the refusal of the trial court to admit into evidence the testimony of a psychiatrist that the appellant was unlikely to have engaged in the alleged acts of child sexual abuse based upon the doctor's "indicators for pedophilia." The defense offered to call as an expert witness in its behalf, Dr. Richard A. Gardner of New York City, a practicing and board certified psychiatrist and clinical professor of child psychiatry at the College of Physicians and Surgeons of Columbia University. Following an out-of-court hearing, the trial court ruled the proffered evidence inadmissible. The court then proceeded to actually hear all such proffered testimony by avowal on the record. Again the admission was denied. Dr. Gardner's proposed testimony was to the effect that in his practice he had isolated twenty-four "indicators for pedophilia," that he had examined the appellant, and that in his opinion based thereon, the appellant was unlikely to be inclined to engage in pedophilic acts. The doctor stated that pedophilia, a commonly used scientific term, is defined in the Diagnostic and Statistical Manual of the American Psychiatric Association. He indicated that while the definition "has some problems," he used the term as was common in the psychiatric practice to mean a sexual act between an adult and a child. He explained that there is no reliable profile of what a pedophile is. He nevertheless has himself determined certain factors which he believes are indicators of pedophilic tendencies. These factors are complex, sometimes contradictory, and can only be properly evaluated by a

competent psychiatrist. Dr. Gardner finally testified that, based on his entire evaluation, it was unlikely that Leander Tungate was inclined to be disposed to pedophilic acts. He nevertheless admitted that whether a person may have these indications or not, no one can conclusively determine whether or not someone has committed a particular pedophilic act, based solely on psychiatric evaluation.

■ The trial court in ruling the proffered testimony inadmissible, stated that such testimony went to the ultimate issue of guilt or innocence in this case, and as such, invaded the province of the jury. Moreover, the court also ruled that the proffered testimony and conclusions lacked sufficient scientific basis for the opinions offered. The court supported its ruling by citing *Pendleton v. Commonwealth*, Ky., 685 S.W.2d 549 (1985), wherein we stated *Id.* at 553:

An opinion as to whether the accused had the ability or propensity to commit such an act is improper because it is an opinion on the ultimate fact, that is, innocence or guilt. Consequently it invades the proper province of the jury. Such an opinion is not evidence of mental condition but is a factual conclusion of the witness on the ultimate issue before the jury which can be reached only by consideration of all the facts.

With regard to "profile" evidence similar to Dr. Gardner's "indicators," we said the following in *Dyer v. Commonwealth*, Ky., 816 S.W.2d 647, 653:

Recently, our Court has been confronted with a series of cases involving a similar problem, wherein the Commonwealth attempted to bolster the testimony of the alleged victim with profile evidence regarding the so-called "child sexual abuse accommodation syndrome": *Bussey v. Commonwealth*, Ky., 697 S.W.2d 139 (1985); *Lantrip v. Commonwealth*, Ky., 713 S.W.2d 816 (1986); *Hester v. Commonwealth*, Ky., 734 S.W.2d 457 (1987); and *Mitchell v. Commonwealth*, Ky., 777 S.W.2d 930 (1989). We reversed all of these cases because the evidence was insufficient to admit the evidence under the *"Frye"* test:

There was no evidence that the so-called "sexual abuse accommodation syndrome" has attained a scientific acceptance or credibility among clinical psychologists or psychiatrists. Even should it become accepted, ... there would remain the question of whether other children who had not been similarly [sexually] abused might also develop the same symptoms or traits. *Lantrip, supra*, 713 S.W.2d at 817.

Profile evidence and argument to establish the accused as a pedophile, as a person with a propensity to sexually molest children, is but the opposite side of a coin stamped on the other side "child sexual abuse accommodation syndrome." This "pedophilia" profile appears to be nothing more than the attempt at an end run around the principles that controlled our decisions in *Bussey, Lantrip, Hester*, and *Mitchell*. It will require much more by way of scientific accreditation and proof of probity than we have in the record before us for this testimony to attain admissibility.

The appellant further complains that the trial court used too strict a standard for the admissibility of scientific evidence in apparently applying the *"Frye* test" (*Frye v. United States*, 293 F. 1013 (D.C.Cir., 1923)); viz., whether the evidence had received "general acceptance in the scientific community." It is argued that with the adoption of the Federal Rules of Evidence (and similarly, of the Kentucky Rules of Evidence), the "Frye test" has been superseded, as held by the U.S. Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). This argument, of course, was not made in the trial court, since *Daubert* was not decided until some forty-five days after this case was tried. The issue was raised, however, in the Court of Appeals but was rejected. That court held that even if *Daubert* applied to this case because of the adoption of the Kentucky Rules of Evidence, the appellant did not even satisfy this more liberal standard of mere relevance and scientific reliability. We agree. The standard for our review of the trial court's ruling denying admissibility is

whether such ruling was "clearly erroneous." *Simmons v. Commonwealth,* Ky., 746 S.W.2d 393, 396 (1988); *Caldwell v. Commonwealth,* Ky., 634 S.W.2d 405, 407 (1982). Certainly it was not clearly erroneous.

■ During the trial, the appellant made a motion for the trial court to permit the jury to visit the house where the day-care center was operated, and to view the room where the sexual abuse allegedly occurred. The trial court's denial of the motion is argued to constitute prejudicial error. The appellant concedes that such a determination with regard to viewing premises is within the sound discretion of the trial court. *Dawes v. Commonwealth,* Ky., 349 S.W.2d 191 (1960); *Arthur v. Commonwealth,* Ky., 307 S.W.2d 182 (1957). In denying the motion, the trial judge noted that it had been over two or three years since the crimes were alleged to have occurred. Further, he related that the jury had been provided not only with photographs of the day-care premises, but also with a videotape. Accordingly, the jury was familiar with the scene of the events described in the testimony. The trial court did not in any way abuse its discretion.

For his last issue, the appellant claims that it was prejudicially erroneous for the trial court to refuse his request for an instruction to the jury on the lesser-included offense of second-degree sexual abuse, a Class A misdemeanor. KRS 510.120. The lesser offense proscribes sexual contact with a person less than fourteen years old, while first-degree sexual abuse, a Class D felony, prohibits the same conduct with a person less than twelve years of age. KRS 510.110. In *Billings v. Commonwealth,* Ky., 843 S.W.2d 890 (1992), we observed *Id.* at 894:

> An instruction on a lesser included offense is appropriate only when the state of the evidence is such that a juror might entertain a reasonable doubt as to the defendant's guilt of the greater offense, and yet believe beyond a reasonable doubt that the defendant is guilty of the lesser offense.

■ Here, it was undisputed that all three little girls whom the jury found the appellant to have sexually abused, were under the age of twelve years. Therefore, no juror could have entertained a reasonable doubt as to the appellant's guilt of first-degree sexual abuse and yet believed beyond a reasonable doubt that he was guilty of second-degree sexual abuse. *See Yarnell v. Commonwealth,* Ky., 833 S.W.2d 834, 837 (1992). The trial court's ruling was correct.

In accordance with all the above, the decision of the Court of Appeals and the judgment of the Jefferson Circuit Court are affirmed.

All concur.