STATE of Delaware

v.

Kevin FLORAY, Defendant.

Cr.A. No. IN96–10–1379, IN96–10–1380, IN96–10–1381, IN96–10–1382, IN96–10–1383, IN96–10–0043.

Superior Court of Delaware, New Castle County.

Submitted: June 13, 1997.
Decided: July 7, 1997.

52. *Mem.Op.* at 22 (citing *Kaiser,* 681 A.2d at 398).

856

Natalie Woloshin, Deputy Attorney General, Department of Justice, Wilmington, for the State.

David P. Cline, Wilmington, and Michael E. Marr, pro hac vice, Baltimore, MD, for Defendant.

## OPINION

COOCH, Judge.

### INTRODUCTION

Kevin Floray (Defendant) has been indicted on three counts of Unlawful Sexual Intercourse First Degree (11 *Del. C.* § 775), two counts of Continuous Sexual Abuse of a Child (11 *Del. C.* § 778), and Attempted Unlawful Sexual Intercourse First Degree (11 *Del. C.* § 531). The alleged victims are Defendant's seven year old daughter and a ten year old girl who is a friend of Defendant's daughter. Trial is scheduled for July 15, 1997. Defendant has filed a motion in limine proposing to call Lawrence J. Raifman, J.D., Ph.D. as a defense witness to testify (1) that Defendant "does not fit the profile of a pedophile or child sexual abuser"; (2) "as to general principles of social and behavioral sciences to assist the jury in determining each of the two alleged child victim's credibility concerning their claims that the Defendant sexually abused them in the face of the Defendant's denials"; and (3) that the jury "must be particularly careful in judging the credibility of the alleged victims in this case because the circumstances surrounding their relationship with the Defendant, their parents, the social workers, and prosecution and state agents lends itself to fabricating allegations of sexual abuse." [1]

Defendant proffers that Dr. Raifman will testify not only from his own clinical and forensic experience in dealing with children and adults involving sexual abuse claims, but also will testify based upon the literature that has been written concerning problems dealing with the credibility of children making allegations of sexual abuse against adult care providers. Defendant claims that

"[f]ailure to admit this testimony will, in all likelihood, be reversible error, given the right of this Defendant to a fair trial and the fact that principles governing the admission of such testimony are still evolving." [2]

The State argues that Dr. Raifman's profile testimony is inadmissible because (1) it is not relevant; (2) it impermissibly invades the province of the jury regarding the ultimate issue of fact; and (3) it is not based upon data that is reasonably relied upon by members of the scientific community.

For the following reasons, Defendant's Motion in Limine is **DENIED**.

### DISCUSSION

**I. Expert Testimony Explaining Scientific Evidence Can Be Admissible if It Will Assist the Jury to Understand the Evidence or Determine a Fact in Issue.**

■ Defendant asserts that Dr. Raifman specializes in the area of child sexual abuse and that he will testify based on his own experience and based upon literature concerning problems dealing with credibility of children who have made allegations of sexual abuse.[3] Rule 702 of the Delaware Rules of Evidence states that "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise." When determining admissibility under Rule 702, a trial judge must ensure that all scientific testimony is both relevant and reliable, and that its evidentiary reliability is based upon scientific reliability.[4]

---

1. Def.'s Mot. in Limine at 1.

2. *Id.* at 2.

3. Def.'s Mot. in Limine at 1. Dr. Raifman has a Ph.D. in clinical psychology and a J.D. He is currently engaged in a private practice of clinical and forensic psychology, is an adjunct clinical professor in psychology at Johns Hopkins University Hospital and he is the director of the forensic services office in a Maryland hospital. It appears that none of his past presentations or publications dealt specifically with the subject of

child sexual abuse. Given, however, the broad reach of D.R.E. 702 and the State's lack of objection to his professional qualifications, Dr. Raifman's qualifications appear otherwise sufficient to establish his qualifications as an expert in psychology.

4. *Nelson v. State*, Del.Supr., 628 A.2d 69, 74 (1993); *see Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

The expert must identify the facts and data on which the expert's opinion is based before he testifies in terms of opinion or inference.[5] Additionally, if the facts or data relied upon by the expert to form an opinion or inference are of a type reasonably relied upon by experts in the particular field, the facts or data need not be admissible in evidence.[6] Finally, in ruling on the admissibility of expert testimony, this Court must determine whether such evidence would create unfair prejudice, confuse the issues, or mislead the jury.[7]

## II. Expert Testimony That Defendant Does Not Fit the "Profile" of a Pedophile or Child Sexual Abuser Is Inadmissible in This Case on Several Bases.

Courts in this country have reached different results on the question of whether a defendant in a sexual abuse case may offer expert evidence that the defendant does not fit the "profile" of a child sexual abuser, but the trend seems to be not to allow such testimony.[8] Although no Delaware case has apparently directly addressed the admissibility of profile evidence in the area of child sexual abuse, the recent cases in Delaware dealing with other types of profile evidence in general support its exclusion in this case.

### A. The Proffered Testimony Has Little Probative Value and is Extremely Prejudicial to the State.

In *Pennell v. State*, the Supreme Court of Delaware addressed the issue of admissibility of profile evidence in the context of a murder case.[9] In that case, this Court had allowed an F.B.I. agent to testify as an expert on serial murderers.[10] This Court allowed the agent to testify as to "signature" aspects of the crime, because whether all three murders were committed by the same person was clearly a fact in issue for the purposes of Rule 702.[11] However, this Court did not allow testimony of "profile" evidence, or evidence which attempted to link the general characteristics of serial murderers to specific characteristics of the defendant.[12] On appeal, the Supreme Court determined that the agent's testimony about the signature aspects of the crime did not, contrary to the trial court's ruling, impermissibly introduce profile evidence, which the Court referred to as "of little probative value and extremely prejudicial." [13] Similarly, in

5. D.R.E. 705.

6. D.R.E. 703.

7. D.R.E. 403; *see also Nelson*, 628 A.2d at 74.

8. The Connecticut Court of Appeals has stated that "[a] majority of the courts that have considered the issue [of pedophile profile testimony] have rebuffed attempts on the part of the state as well as the defendant to present [expert] testimony of this kind." *State v. Person*, 20 Conn.App. 115, 564 A.2d 626, 631 (1989) (citations omitted). *See also* Gregory G. Sarno, Annotation, *Admissibility of Expert Testimony as to Criminal Defendant's Propensity Toward Sexual Deviation*, 42 A.L.R.4th 937 (1985 & 1996 Supp.). While the earlier cases in the main volume of the annotation reflect that courts have reached different results on the issue of the admissibility of defense-proffered expert evidence on the proclivity of a defendant to molest children, the more recent cases in the annotation supplement generally support the exclusion of such evidence. *See e.g., Tungate v. Commonwealth*, Ky.Supr., 901 S.W.2d 41 (1995) (holding that trial court did not abuse its discretion in refusing to admit testimony of psychiatrist that defendant was unlikely to have engaged in alleged child abuse acts as evidence went to ultimate issue of guilt or innocence and, moreover, lacked sufficient scientific basis); *State v. Tucker*, App., 165 Ariz. 340, 798 P.2d 1349 (1990) (holding that an expert witness testifying about general characteristics and behavior of sex offenders and victims may not explain that, based upon the characteristics described, a person's conduct is consistent or inconsistent with a crime having occurred and that admission of such testimony was reversible error); *Person*, 564 A.2d at 631–32 (holding that trial court did not err in prohibiting testimony from psychologist and psychiatrist that defendant did not fit profile of pedophile where it was not shown that such profile was accepted by scientific community or that either expert was experienced with respect to incestuous relationships).

9. Del.Supr., 602 A.2d 48 (1991).

10. *Id.* at 54.

11. *Id.* at 55.

12. *Id.*

13. *Id.* The Supreme Court reasoned that allowing profile testimony would permit the defendant

this case, Dr. Raifman proposes to testify that Defendant does not possess the general characteristics, or "profile," of a pedophile or child sexual abuser, which, as in *Pennell,* would have little probative value and be extremely prejudicial to the State's case.

### B. Whether or Not Defendant Fits the Profile of a Pedophile or Child Sexual Abuser Is Not Relevant to the Question of Whether Defendant Committed the Crimes Charged.

Evidence is relevant and may be admissible if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.[14] Courts have based the exclusion of expert profile testimony on the rationale that whether or not the defendant fits a profile is irrelevant to the question of whether the defendant committed the crime charged. In *United States v. Powers,* the defendant argued on appeal that the trial court erred in excluding testimony of two experts who would have testified that defendant did not fit the psychological profile of a fixated pedophile.[15] The defendant in that case was charged with sexual abuse of his daughter, and he argued that the expert testimony was necessary to prove that he was psychologically unlikely to have committed the crimes charged.[16] The Fourth Circuit Court of Appeals affirmed the District Court's finding that such testimony was irrelevant and stated that "[t]o be relevant, this testimony must show, in a very real way, that *because* Powers did not share in a characteristic common to a large minority of incest perpetrators, he was less likely to be an incest perpetrator himself ." [17]

■ In *State v. Clements,* the Supreme Court of Kansas held that the trial court committed reversible error by allowing a State expert witness to testify about the general characteristics of child molesters.[18] The court discussed similar cases from Arkansas, Washington, and Vermont and stated that "evidence which only describes the characteristics of the typical offender has no relevance to whether the defendant committed the crimes in question, and the only inference which can be drawn from such evidence, namely that a defendant who matches the profile must be guilty, is an impermissible one." [19] In the instant case, Defendant seeks to offer profile evidence for the opposite reason, to demonstrate that he does not have the characteristics of a pedophile. Such evidence is likewise inadmissible because it is irrelevant and leads to an impermissible inference that, because Defendant may not fit a certain profile, he is innocent of the crimes charged.

### C. The Delaware Rules of Evidence Do Not Allow Opinion Testimony to Prove Character; Therefore, an Expert Witness' Opinion That Defendant Does Not Fit the Profile of a Pedophile or Child Sexual Abuser is Inadmissible.

■ Profile evidence has been excluded from trial as impermissible character evidence. Evidence of a pertinent trait of Defendant's character may be offered by him for the purpose of proving that he acted in conformity therewith on a particular occasion; [20] however, this proof may be made by testimony as to reputation only.[21]

In a Delaware case where a father was accused of physically abusing his infant son, this Court excluded expert testimony that the defendant did not have the characteristics of a child abuser on the grounds that

to be "accused by a witness who was not present at any of the crimes." *Id.*

14. D.R.E. 401, 402.

15. 4th Cir., 59 F.3d 1460, 1470 (1995), *cert. denied,* 516 U.S. 1077, 116 S.Ct. 784, 133 L.Ed.2d 734 (1996).

16. *Id.* at 1472.

17. *Id.*

18. 244 Kan. 411, 770 P.2d 447 (1989).

19. *Id.* 770 P.2d at 453–54 (citing *Hall v. State,* 15 Ark.App. 309, 692 S.W.2d 769 (1985), *State v. Maule,* 35 Wash.App. 287, 667 P.2d 96 (1983), and *State v. Percy,* 146 Vt. 475, 507 A.2d 955 (1986)).

20. D.R.E. 404(a)(1).

21. D.R.E. 405.

such testimony was impermissible character evidence.[22] A defense psychiatrist proffered testimony, after testing and interviewing the defendant, that the defendant did not appear to have the characteristics that are likely to result in abuse of his son.[23] This Court excluded the testimony, finding that it was inadmissible character evidence.[24] The Court noted that, while the Federal Rule of Evidence 405(a) provides that character evidence may be made by opinion or reputation evidence, the Delaware Rule of Evidence 405(a) only allows reputation testimony to prove character.[25] The Court "discern[ed] an intentional decision that Delaware courts exclude opinion testimony on character."[26]

The Michigan Court of Appeals reached the same result in affirming the trial court's refusal in an armed robbery case to admit expert testimony of a defendant's psychologist to the effect that "a person with defendant's personality type would be much less likely to commit the crimes with which defendant was charged than would someone without such a personality type."[27] Michigan's rules of evidence, like those in Delaware, limit evidence of a person's character to testimony regarding that person's reputation for that character trait.[28] The court concluded that the proffered expert testimony about characteristics of the defendant's personality type constituted inadmissible opinion evidence as to character.[29]

Dr. Raifman may not offer expert testimony that Defendant does not fit the profile of a pedophile or child molester, because such testimony amounts to his opinion about Defendant's character traits for the purpose of proving that he acted in conformity therewith.

### D. Profile Evidence of Pedophiles and Child Sexual Abusers Has Not Been Reasonably Accepted Within the Scientific Community and Is Therefore Inadmissible.

Many other jurisdictions have found that profile evidence is inadmissible because the data was not reasonably relied upon or accepted within the scientific community.[30] In a New Jersey case, the defendant sought to introduce expert testimony that defendant did not fit a psychological profile of a child sexual abuser.[31] The trial court concluded that "there are no particular mental characteristics peculiar to child sexual abusers.... In any event, psychiatrists cannot so determine by examination."[32] The appellate court agreed that such proposed defense expert testimony was not based on a reasonably reliable scientific premise.[33] The court noted

---

22. *State v. Screpesi*, Del.Super., 611 A.2d 34 (1991). The Court did not identify the proffered testimony as "profile" evidence, but rather as testimony "that defendant does not appear to have characteristics that are likely to result in abuse." The testimony clearly fits within the rubric of "profile" evidence. *Id.* at 40. The court also stated that "[a] difference exists between establishing abuse occurred and depicting someone as a child abuser," and noted that the State did not paint the defendant as a child abuser. *Id.*

23. *Id.* at 40.

24. *Id.*

25. *Id.*

26. *Id.* California is one jurisdiction that has permitted expert testimony to demonstrate that a defendant exhibits no sings of "deviance or abnormality." *People v. Stoll*, 49 Cal.3d 1136, 265 Cal.Rptr. 111, 783 P.2d 698 (1989). This testimony, however, is admissible as character evidence by specific statutory provision. *Id.; Cal.

Evid.Code § 1102. Delaware law has no such provision.

27. *People v. Watkins*, 176 Mich.App. 428, 440 N.W.2d 36, 37 (1989).

28. *Id.*

29. *Id.*

30. *See* John E.B. Byers, et al., *Expert Testimony in Child Sexual Abuse Litigation*, 68 Neb. L.Rev. 1, 143–44 (1989) (opining that although some decisions have allowed a defendant to offer profile testimony as character evidence, this theory of proof is "defective" because "[t]he relevant scientific literature does not support the conclusion that there is a reliable profile of a 'typical' sex offender").

31. *State v. Michaels*, App. Div., 264 N.J.Super. 579, 625 A.2d 489, 508 (1993).

32. *Id.* 625 A.2d at 509.

33. *Id.* 625 A.2d at 510.

that it was "not alone" in its rejection of such profile testimony.[34]

The Supreme Court of New Jersey has held that an expert's opinion that a defendant did not have the psychological traits of a rapist could be admissible as character evidence under certain circumstances.[35] Notably, that court relied on the rule of evidence allowing character evidence to be proved by opinion testimony, which is contrary to the rule in Delaware. The Court went on to uphold the trial court's exclusion of such testimony, however, as the defendant did not meet his burden of showing that the expert's testimony was based on reasonably reliable scientific premises.[36]

Defendant has a burden to show that the proffered expert scientific evidence is reliable, and that the opinion is based on facts or data "reasonably relied upon by experts in the particular field." [37] Defendant has here failed to meet that burden, and the proffered profile testimony is inadmissible.[38]

### E. Summary

This Court denies Defendant's Motion to Admit Dr. Raifman's profile testimony on four separate and independent grounds. First, applying the *Pennell* Court's rationale, testimony that Defendant does not fit a profile has "little probative value and [is] extremely prejudicial" to the State's case.[39] Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, among other reasons.[40] Second, the issue in this case is whether Defendant engaged in sexual acts with the alleged victims. Even if "relevant" evidence under the expansive definition of Delaware Rule of Evidence 401, whether or not Defendant fits a profile of a pedophile or sex offender does not prove that he did or did not commit the acts charged. Third, Delaware Rule of Evidence 405(a), unlike the Federal rule, does not contemplate opinion character testimony. Dr. Raifman's testimony about characteristics of Defendant as compared to those of pedophiles and child sexual abusers would amount to inadmissible opinion testimony on character. Fourth, Defendant has not met his burden of demonstrating to the Court that the proffered testi-

34. *See id.* (citing James M. Peters & William D. Murphy, *Profiling Child Sexual Abusers, Legal Considerations*, 19 Crim. Justice and Behavior 38, 39 (1992) ("With the notable exception of courts in California ... virtually every appellate court that has ruled on the admissibility of expert testimony regarding the psychological profile of child molesters has rejected it.")). *See also* Saritha R. Angilvel, *Expert Testimony in Child Sexual Abuse Cases: Avoiding the "Profile" Trap*, 39 A.F.L.Rev. 133 (1996).

35. *State v. Cavallo*, 88 N.J. 508, 443 A.2d 1020, 1023 (1982).

36. *Id.* 443 A.2d at 1029–30. *See also United States v. St. Pierre*, 8th Cir., 812 F.2d 417, 420 (1987) (holding that the scientific community has not been shown to recognize the existence of identifiable traits common to rapists). It should be noted that these opinions relied on the then-seminal case on scientific evidence, *Frye v. United States*, D.C.Cir., 293 F. 1013 (1923), which has since been superseded by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The cases remain instructive, however, because under *Daubert*, Defendant has a similar burden of demonstrating the reliability of proffered scientific evidence. In Delaware, scientific evidence must satisfy the pertinent Delaware Rules of Evidence. *Nelson*, 628 A.2d at 74. The court must determine that the evidence sought to be admitted is relevant and reliable. *Id.*

37. D.R.E. 703; *Nelson*, 628 A.2d at 74.

38. Defendant has provided to this Court two articles that support Dr. Raifman's proffered testimony regarding children's testimony in child sexual abuse cases (Margaret–Ellen Pipe, Ph.D. & Gail S. Goodman, Ph.D., *Elements of Secrecy: Implications for Children's Testimony*, 9 Behav. Sci. & L.33 (1991) and Hollida Wakefield, M.A. & Ralph Underwager, Ph.D., *Sexual Abuse Allegations in Divorce and Custody Disputes*, 9 Behav. Sci. & L. 451 (1991)) and has cited a third (Stanley S. Clawar, Ph.D., C.C.S. & Brynne V. Rivlin, M.S.S., *Children Held Hostage: Dealing with Programmed and Brainwashed Children* (1991)). He has offered no further support for the proffered testimony that Defendant does not fit the profile of a child sexual abuser. Further, while the Court gives due weight to these proffered professional articles, a survey of the literature on this subject reveals that there is a significant difference of opinion among professionals regarding the accuracy and admissibility of expert testimony in child sexual abuse cases.

39. *Pennell*, 602 A.2d at 55.

40. D.R.E. 403.

mony is based on reliable scientific evidence. This Court will follow what it views as the majority rule and the trend of recent well-reasoned cases.[41] The testimony of Dr. Raifman that Defendant does not fit the profile of a pedophile or a child sexual abuser constitutes inadmissible "profile" evidence and therefore must be excluded.

## III. Expert Testimony on General Principles of Social and Behavioral Science is Admissible in Cases of Intrafamily Child Sexual Abuse Where It Explains Specific Behavior Related to Child Sexual Abuse Syndrome; It is Not Admissible Where it Relates Directly to the Issue of Credibility, Does Not Directly Relate to Child Abuse Syndrome, or Involves a Non-Intrafamilial Relationship.

### A. Expert Witnesses Generally May Not Testify Regarding the Credibility of Other Witnesses.

Expert testimony is not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact.[42] However, an expert may not directly or indirectly express opinions concerning a sexual abuse complainant's veracity or attempt to quantify the probability of truth or falsity of either the initial allegations of abuse or subsequent statements.[43] The credibility of witnesses generally is not an appropriate subject for expert testimony.[44] Such testimony is often excluded because it is not helpful to

the jury, which can make its own determination of credibility.[45]

In *State v. Redd,* the defendant requested that this Court order a pre-trial psychiatric examination of the complaining minor witness.[46] This Court denied the defendant's motion, holding that "[b]are allegations of fabrications will not suffice, nor will detailed allegations of fabrications if such detailed allegations do little more than attack the credibility of the victim since questions of a victim's credibility are reserved exclusively for the jury."[47] The Court cited a Supreme Court of Pennsylvania opinion, *Commonwealth v. Seese,* where the court held that admission of expert testimony on the issue of the credibility of an eight-year old rape victim was error.[48] That *Seese* court observed that

[t]he question of whether a particular witness is testifying in a truthful manner is one that must be answered in reliance upon inferences drawn from the ordinary experiences of life and common knowledge as to the natural tendencies of human nature, as well as upon observations of the demeanor and character of the witness. The phenomenon of lying, and situations in which prevarications might be expected to occur, have traditionally been regarded as within the ordinary facility of jurors to assess. For this reason, the question of a witness' credibility has routinely been regarded as a decision reserved exclusively for the jury.[49]

The Ninth Circuit Court of Appeals in *United States v. Binder* assigned error to the

---

41. The Court recognizes that evidence regarding "profiles," generally, is continuing to evolve, and "[w]hether such evidence will be admitted depends upon the particular facts and issues of the case." Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 401.08[10] (Joseph M. McLaughlin ed., 2d ed.1997).

42. D.R.E. 704.

43. *Wheat v. State,* Del.Supr., 527 A.2d 269 (1987).

44. Weinstein, *supra* note 39 § 702.03[5].

45. *See, United States v. Scop,* 2d Cir., 846 F.2d 135, 142 (1988); *United States v. Binder,* 9th Cir., 769 F.2d 595, 602 (1985).

46. Del.Super., 642 A.2d 829, 830–31 (1993).

47. *Id.* at 835.

48. 512 Pa. 439, 517 A.2d 920 (1986).

49. *Id.* 517 A.2d at 922 (citations omitted) *cited with approval in Wheat,* 527 A.2d at 273 and *Redd,* 642 A.2d at 834. *See also Hutton v. State,* Md. Ct.App., 339 Md. 480, 663 A.2d 1289 (1995) ("[I]t is certain that, no matter how learned in his or her field of expertise, no expert is in a better position to assess the credibility of a witness that is the jury.")

District Court's decision to admit expert testimony concerning the credibility of the abused children.[50] Of critical importance to the decision was the fact that

> [t]he testimony of the experts ... was not limited to references to psychological literature or experience or to a discussion of a class of victims generally. Rather the experts testified that these particular children in this particular case could be believed. The jury in effect was impermissibly being asked to accept an expert's determination that these particular witnesses were truthful.[51]

An expert may not, as Defendant proposes, testify regarding "the propensity of children such as both alleged victims in this case to falsify allegations of sexual misconduct." [52] "A doctor ... cannot pass judgment on the alleged victim's truthfulness in the guise of a medical opinion, because it is the jury's function to decide credibility." [53] Further, such testimony by impressively qualified experts on the credibility of other witnesses is may be prejudicial as it unduly influences the jury.[54] Dr. Raifman's testimony on the alleged victims' credibility would impermissibly invade the province of the jury by commenting on the truthfulness of the witnesses, and his qualifications may unduly influence the jury; thus, such testimony will be excluded.

### B. The Admissibility of Expert Testimony in Child Sexual Abuse Cases is Limited to Instances Where the Victim has Displayed Behavior Which the Average Layperson Would Need Assistance in Understanding.

Delaware courts have recognized the prejudicial impact of expert evidence on a witness' credibility and has therefore limited its admissibility to certain situations. In *Wheat v. State*, the Supreme Court of Delaware held that "expert testimony in cases of alleged child sexual abuse must be limited to general principles of social or behavioral science which may assist the jury in determining the child's credibility...." [55] The defendant in *Wheat* was convicted of sexually molesting his stepdaughter.[56] Before the trial, the victim had recanted her accusations, but then later reversed her recantation and testified consistently with her original allegations of abuse.[57] At trial, over defense objection, an expert testified for the State to explain the factors that cause a victim falsely to recant.[58] On appeal, the defendant argued that the expert's testimony impermissibly invaded the credibility province of the trier of fact, and the Court agreed, holding that the witness provided a statistical evaluation of the victim's veracity in "lie detector" fashion when she testified about statistics of victim recantations in a child sexual abuse case.[59]

50. 769 F.2d at 602.

51. *Id.*

52. Def.'s Mot. in Limine at 2.

53. *See United States v. Whitted*, 8th Cir., 11 F.3d 782, 785–86 (1993) (citing *United States v. Azure*, 8th Cir., 801 F.2d 336, 339–41 (1986)); *United States v. Toledo*, 10th Cir., 985 F.2d 1462 (1993) (noting that many courts exclude expert testimony on credibility of witnesses because it "usurps a critical function of the jury"); *United States v. Barnard*, 9th Cir., 490 F.2d 907, 912–13 (1973) (holding that trial court properly excluded psychiatric and psychological testimony as to credibility of codefendant), *cert. denied*, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974); *State v. Rimmasch*, Utah Supr., 775 P.2d 388, 406 (1989) ("[N]othing has come to our attention suggesting a general acceptance of the proposition that those who regularly treat symptoms of sexual abuse are capable of determining with a high degree of reliability the truthfulness of allegations that one has been abused.").

54. *See, e.g., Scop*, 846 F.2d at 142.

55. *Wheat*, 527 A.2d at 275. *See also Powell v. State*, Del.Supr., 527 A.2d 276 (1987) (holding that admitting expert's testimony that alleged victims tell the truth in 99 percent of child sex abuse cases amounted to plain error). While the Supreme Court's opinions in *Wheat* and *Powell*, like many of the other cases cited *infra*, addressed expert testimony offered by the State, the rationale for limiting such testimony is the same in the instant case, where it is offered by Defendant.

56. *Id.* at 270.

57. *Id.*

58. *Id.* at 271.

59. *Id.* at 272–75.

Such expert testimony is only admissible in cases where evidence of child sexual abuse syndrome, such as recantation, delay in reporting, and other behavior inconsistent with the charge of sexual abuse is present.[60] As the State points out, Defendant's Motion in Limine does not identify any behavior by the alleged victims that may be construed as inconsistent with the occurrence of child sexual abuse. Defendant in his motion only generally points to "circumstances surrounding [the alleged victims'] relationship with the Defendant, their parents, the social workers, and prosecution and state agents [that lend themselves] to fabricating allegations of sexual abuse,"[61] without describing or proffering what the particular circumstances may be. This Court has held that unless a "special nexus" is shown between the evidence of common behavior and the facts of the case, the use of such common behavior evidence is highly prejudicial.[62] As Defendant has made no showing that the alleged victims have displayed any behavior which the average layperson would need assistance in understanding, there is no basis to allow general testimony on social or behavioral science to assist the jury in determining the alleged victims' credibility.

### C. Expert Testimony Concerning Child Sexual Abuse is Inadmissible as to an Alleged Victim Who is Not Related to Defendant.

▬▬▬ In any event, such testimony is inadmissible as to the second non-related (to Defendant) alleged victim. The *Wheat* Court explicitly limited its holding to cases of intrafamily sexual abuse.[63] This Court has held that expert testimony concerning child sexual abuse is inadmissible in nonintrafamily cases, even if Defendant claims a quasi parent-child relationship with the victim.[64] One of the two alleged victims in the instant case is Defendant's daughter, but the second alleged victim is not related. The State correctly argues that admission of the expert testimony regarding child sexual abuse as to one victim but not to the other would lead to unfair prejudice to the State's case as well as to confusion of issues by the jury.[65]

### D. Summary

Defendant has not identified any particular behavior of either alleged victim that is consistent with child sexual abuse syndrome, other than the fact of the allegation against Defendant itself. Defendant has not demonstrated to this Court that the proffered expert testimony would amount to anything more than an attack on the alleged victims' credibility, which is impermissible. Given the very limited probative value, if any, of such expert testimony, it is substantially outweighed by the danger of unfair prejudice to the State and confusion of the issues. Dr. Raifman's proffered expert testimony on the issue of social and behavior sciences to assist the jury in determining the alleged victims' credibility must be excluded.

---

60. *Wittrock v. State*, Del.Supr., No. 373, 1992, Horsey, J., 1993 WL 307616 (July 27, 1993) (citing *Wheat*, 527 A.2d at 274, permitting the use of expert testimony when an expert testifies as to "child sexual abuse syndrome where the complainant has displayed behavior or made statements, which the average layperson would not recognize as consistent with the occurrence of sexual abuse, that are actually attributable to intrafamily sexual abuse"). *See e.g., State v. Tucker*, App., 165 Ariz. 340, 798 P.2d 1349 (1990) (holding that "an expert witness may testify about the general characteristics and behavior of sex offenders and victims if the information imparted is not likely to be within the knowledge of most lay persons"); *see generally* Lisa R. Askowitz & Michael H. Graham, *The Reliability of Expert Psychological Testimony in Child Sexual Abuse Prosecutions*, 15 Cardozo L.Rev.2027 (1994).

61. Def.'s Mot. in Limine at 1.

62. *Wheat*, 527 A.2d at 274.

63. *Id.* at 274 n. 4.

64. *Redd*, 642 A.2d at 832.

65. Charges involving both alleged victims remain joined the same indictment. Super. Ct.Crim. R. 8(a).

## CONCLUSION

For the foregoing reasons, Defendant's motion in limine to admit the expert testimony of Dr. Raifman for all the requested reasons is **DENIED**.

**IT IS SO ORDERED.**